### THE ORION.

(Circuit Court of Appeals, Fourth Circuit. December 21, 1916.)

#### No. 1480.

COLLISION ⟨⤳⟩136—SUIT FOR DAMAGES—PROOF OF DAMAGES FOR DETENTION.
   On an issue as to the damages recoverable by a chartered vessel, injured in collision through the fault of the other vessel, by reason of loss of time while being repaired, proof of the time lost and of her daily net earnings under her then charter is sufficient to make a prima facie case, in the absence of any countervailing evidence.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 290; Dec. Dig. ⟨⤳⟩136.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Charles A. Woods, Judge.

Suit in admiralty for collision by P. Manolondis, master of the steamship Orion, against John Scully and Thomas J. Scully, partners trading as the Scully Towing & Transportation Line, owners of the barge Scully. Decree for libelant, and respondents appeal. Affirmed.

Frank V. Barns, of New York City, and Braden Vandeventer, of Norfolk, Va. (Hughes & Vandeventer, of Norfolk, Va., on the brief), for appellants.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellee.

⟨⤳⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The Greek steamer Orion and the barge Scully, belonging to the appellants, were in collision on the morning of April 19, 1915. The steamship was damaged, and the necessity of repairing her injuries delayed her sailing 2½ days. Her master filed a libel in personam against the appellants. They answered, but ultimately conceded that their barge was solely in fault. A reference was then made. After hearing testimony, the commissioner reported that the damages amounted to $2,468.58, of which $1,575 were for detention, and the remainder represented the cost of repairs and other disbursements resulting from the collision. The appellants excepted to the commissioner's report, but after argument it was confirmed by Circuit Judge Woods, then by special assignment holding the District Court.

While appellants have assigned as error the allowances for repairs and expenses, and have commented upon them as illustrative of what they claim was a laxity as to the proof of damage given below, they have confined their request for a reversal to that portion of the award intended to compensate for the time lost by the ship. They do not question that there was testimony justifying the finding that the collision postponed her sailing by 2½ days, but they contend that there was no sufficient evidence as to what such delay cost her owners, if it cost them anything.

The ship was at the time under charter, and at the demand of the appellants the charter party was put in evidence. The master, who was examined immediately after the collision, and of course before the ship sailed from Norfolk, testified as to the time consumed in making the voyage under the charter party from Genoa to Norfolk, as to the time which would probably be required to complete the return voyage, and the number of days which would be necessarily occupied in discharging her cargo in Italy. From the data thus furnished the commissioner calculated the gross daily earnings of the ship under the charter party. Her master also testified as to the disbursements which the ship would have to make in order to earn this money. From this data the commissioner calculated the daily net earnings of the ship at $630 per day, and awarded $1,575 as damages for her detention for 2½ days. The appellants say that the charter party shows that the ship would have been subjected to other expenditures than those included by the commissioner in his calculation. They did not attempt, however, to show that such expenditures were in fact incurred on that particular voyage by the ship, what was their amount, or what would ordinarily be their amount. It is highly improbable that, had full evidence been given as to such matters, the commissioner's calculations would have been materially affected. The record does not disclose that these particular objections were ever brought to his attention.

The second contention of the appellants is more far-reaching. They point to the fact that the ship offered no evidence as to the rates prevailing in the freight market at the time, nor did she show that she

either could or did procure immediate employment at equally satisfactory rates so soon as she completed the charter party in question. She produced no proof as to what her earnings had been for a period before and after such charter party. It is common to use some one or two or all of these methods to determine or aid in determining the value of time to a ship. There are circumstances in which the omission to prove any one of them would be fatal to her claim, but the admiralty is a very practical branch of law. It has, with reference to the testimony it will consider, always refused to subject itself to ironbound rules. It is continually called upon to deal with transactions, some parts of which have taken place in distant parts of the world. To require each detail to be proved in the way upon which a court of common law would insist would be to deny justice. The cost of procuring the testimony would oftentimes exceed the amount in controversy.

All the world, even a judge, knows that freight rates have been steadily rising ever since the fall of 1914, and that every ship which could safely float has been in constant demand. To require formal proof of such facts would be pedantry run mad. If the appellants had any reason to believe that the charter party in evidence was at a higher rate than the ship could command at the end of her voyage, or that there were any other circumstances which made the sum awarded in this particular case unjust, they could have brought them to the attention of the commissioner, or of the learned judge sitting below. In that event, had any of their allegations seemed at all plausible, the ship could, and doubtless would, have been required to produce further testimony. In the absence of all countervailing evidence, the ship made out a sufficient prima facie case.

The decree below must therefore be affirmed.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes