## ATWATER & COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 17. Submitted October 12, 1927.—Decided November 21, 1927.

1. Mere delays in crediting the owner with coal pooled in a coal ex-
change in obedience to an order made under the Lever Act for the

purpose of expediting shipments, was not a taking for a public use of the owner's power to dispose of the coal, nor did it create an implied contract of the United States to indemnify the owner against losses due to the delays and decline of market prices. P. 191.

2. The Court of Claims has no jurisdiction of a suit to recover compensation for property appropriated by the United States under § 10 of the Lever Act. P. 191.

60 Ct. Cls. 323, affirmed.

APPEAL from a judgment of the Court of Claims sustaining a demurrer and dismissing the petition in a suit by a shipper of coal claiming compensation for losses resulting from delays of the Government in allowing credit for coal pooled in a coal exchange during the war, as required by an order made under the Lever Act.

*Messrs. Walter Carroll Low* and *Carroll Blakely Low* were on the brief for appellant.

*Solicitor General Mitchell* and *Mr. Gardner P. Lloyd,* Special Assistant to the Attorney General, were on the brief for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

A demurrer to the amended petition was sustained; judgment dismissing the action was entered, and appeal was taken under §§ 242 and 243 of the Judicial Code, before the taking effect of the Amendment of February 13, 1925.

The substance of the allegations follows. Claimant was a shipper of coal. In June, 1917, there was organized an unincorporated association called the Tidewater Coal Exchange and rules were made for its operation. The purpose was to expedite the transfer of coal from cars to boats at certain Atlantic ports. August 23, 1917, the President, by virtue of the Lever Act, approved

August 10, 1927, c. 53; 40 Stat. 276, appointed a Fuel
Administrator to carry out its provisions relating to fuel.
The latter made an order that approved the rules of the
exchange; designated its commissioner as his representa-
tive to carry out the order and rules; and required every
shipper of coal for trans-shipment at such ports, on and
after November 11, 1917, to consign the coal to the ex-
change in accordance with and subject to its rules. The
defendant, acting through the Fuel Administrator, repre-
sented and agreed that any and all coal shipped subject
to the order should be credited to the shipper in accord-
ance with the rules of the exchange. The order and
rules required that all coal shipped to such ports should
be pooled with other shipments of the same classification,
and that each shipper should be credited in the pools
with coal equivalent to the amounts theretofore shipped
by him. Claimant, at various times between November
11, 1917, and December 5, 1918, shipped coal to the ex-
change. "The defendant, acting through said United
States Fuel Administrator, its duly authorized representa-
tive, withheld from and failed to credit" claimant for coal
to which it was entitled, amounting in all to 34,143 net
tons. Claimant was not given credit for these amounts
until December 5, 1918. It was ready to receive the coal
at the various times the credits should have been given.
And there are allegations to show that, by reason of the
facts above mentioned, claimant was damaged in the sum
of $50,000.

Claimant's narration strongly suggests that the failure
to give it timely credits was due to some fault or negli-
gence on the part of those operating the exchange. But,
recognizing the rule that the Government cannot be held
for tort (*Bigby* v. *United States,* 188 U. S. 400), it seeks

recovery on the ground that its property was taken for public use entitling it to compensation under the Fifth Amendment.

No part of claimant's coal was consumed or appropriated by the Government. Claimant asserts that its power to dispose of the coal was taken and withheld until it got credit therefor. But, if that be assumed, there is nothing to indicate that the taking was for public use. Moreover, if property was appropriated for public use, the taking must have been under § 10 of the Lever Act (*Bedding Co.* v. *United States,* 266 U. S. 491), and the Court of Claims had no jurisdiction, as that section gave the district courts exclusive jurisdiction over controversies concerning compensation. *United States* v. *Pfitsch,* 256 U. S. 547; *Houston Coal Co.* v. *United States,* 262 U. S. 361.

Claimant contends that, even if there was no taking, the Government is liable on a contract implied in fact. It was not the Government's purpose to acquire any of claimant's property. The Fuel Administrator's order was made to expedite the movement of coal by subjecting it to the rules and operation of the exchange. And, as the credits were not withheld for any public purpose, the facts and circumstances alleged are clearly insufficient to imply an obligation on the part of the Government to indemnify claimant against losses due to delays and decline of market price. Cf. *Bothwell* v. *United States,* 254 U. S. 231; *Morrisdale Coal Co.* v. *United States,* 259 U. S. 188; *Omnia Co.* v. *United States,* 261 U. S. 502. Indeed, the circumstances rebut the existence of such an agreement. *Klebe* v. *United States,* 263 U. S. 188, 191; *Horstmann Co.* v. *United States,* 257 U. S. 138, 146.

*Judgment affirmed.*