Littleton, Judge,
delivered the opinion of the court:
In this case plaintiff seeks to recover $75,856.26, with interest at 6 percent per annum from July 31, 1918, as damages for alleged unlawful detention of the sailing vessel ATbyn for a period of 130 days from March 23 to July 31, 1918. Of this • amount the sum of $64,772.50 represents the claimed charter value of the vessel on a bare-boat basis at 25 cents per net registered ton per day, or $498.25 per day for 130.days, and the balance of $11,083.71 consists of reasonable and necessary costs and expenses actually incurred and paid during the detention period.-
This suit and eleven others, all of which involve substantially the same facts and circumstances so far as alleged unlawful detention is concerned, were brought under and pursuant to the provisions of a special act of Congress approved June 29, 1936, 44 Stat. 2368, which is set forth in finding 1.
Plaintiff, the owner of the ATbyn, contends that the ship itself, and not the cargo and supplies, was the object of detention by the United States; that the ship did not propose to pass through a submarine or danger zone, and was not detained for that reason; that any suspicion with respect to the crew did not justify the detention and does not *339 constitute a defense to the claim for detention; that during most of the period the vessel was under detention it was so detained for the purpose of attempting to force the owners to charter the vessel to the United States Shipping Board or for the purpose of enabling the United States to requisition the vessel if it was not so chartered, but it is contended that this did not justify the detention and does not constitute a defense to the claim for unlawful detention.
On behalf of the defendant, it is insisted that the Government of the United States was acting within its sovereign power in forbidding withdrawal of the prohibited articles and ship’s stores and supplies from the United States without permission therefor having first been obtained from the duly constituted authority acting for the United States in that regard; that the Executive orders and proclamations vested in the War Trade Board express authority to withhold or refuse licenses for the taking out of the country certain articles which included ship’s stores for which licenses were applied for in this and other similar cases; that it was not the province of any individual or of any Government to question the exercise of those powers by the Government of the United States or the reason, or reasons, for the imposition of such restriction; that the War Trade Board, which was composed of representatives of certain departments and agencies of the Government, and which was acting for the United States in such matters, was under no obligation to give its reasons for delaying or refusing to issue export licenses for bunkers or ship’s stores and supplies in given cases; that neither the legislation making it illegal to take out ship’s stores without first obtaining an export license therefor nor any delay in granting licenses violated any law of the United States or International Lawr; that the United States should not be required to establish the considerations or factors which controlled its actions through its authorized war-time agencies during the period of a war with its far-reaching result, and that it is sufficient that such authorized agencies were lawfully constituted and that the authority which they exercised was provided for in the related statutes, Executive orders, and reasonable regulations.
*340 We have studied the record carefully and have set forth in the findings rather fully what we regard as the essential evidentiary facts relating to the delayed sailing of the Albyn between March 23 and July 31, 1918, by reason of a lack of necessary ship’s stores and supplies, and the refusal until July 12, 1918, of the War Trade Board, acting for the United States, to grant “license for bunker and stores”application which had been duly made for the Albyn March 18. From these facts and the conditions and circumstances-disclosed by the entire record, we have found that the Albyn. was detained by the United States. We have further found that this detention was not unlawful and that the United' States is not obligated to indemnify the owner of the vessel. A discussion here of the facts is not necessary.
There is no material dispute as to what happened during the period between the making of application for bunker license and the granting thereof, nor as to the circumstances under which, and the reasons for which, the United States,, acting through the War Trade Board, detained the vessel and delayed its sailing for a period of 130 days by refusing to grant a license for ship’s stores, without which the vessel was unable to sail if it could have obtained clearance and without which the vessel, under the applicable statute and ■regulations, was unable to obtain clearance from the collector of customs. The War Trade Board was acting for the United States in the exercise of its war powers, one of which was to prevent the exportation or the taking out from the United States of certain articles as cargoes or ship’s stores which, under such circumstances as the War Trade Board might determine, were needed by the United States,, or might be in danger of falling into enemy hands by seizure by enemy craft or otherwise. The War Trade Board, composed as it was of representatives respectively of the Departments of State, Treasury, and Agriculture, and the Food Administration and the United States Shipping Board,, possessed broad authority and discretion, and, in the circumstances and under the conditions disclosed by the record and mentioned in the findings, we are of opinion that the Board did not act unlawfully and was not guilty of abuse of its discretion.
*341 The reasons summarized which prompted the War Trade Board in withholding action on the application by the owner of the ATbyn for a license for ship’s stores, on the basis of which reasons the Board declined to permit the vessel to sail, are set forth in finding 7. In so acting, the United States was only carrying out and making effective the provisions of the acts of Congress and Executive orders -enacted and issued in the lawful exercise of the power and authority possessed by the Government of the United States, and any inconvenience or loss resulting from delay incident to the exercise of such authority by vessels coming into ports of the United States is not damage of such character ;as would make the United States liable to indemnify the •owner of such vessel therefor. We so held in Royal Holland Lloyd v. United States, 73 C. Cls. 722, at page 742, that “The right of the United States to control the exportation or the ‘taking out,’ or the ‘carrying out’ of the United States, goods, stores, or materials of its own, and the •exportation or ‘carrying out’ of which it regarded as inimical to its interest, is undoubted.” In that case we held that while the Zeelandia, which was the vessel there involved, had pending an application for a bunker license she was not entitled to clearance and was, therefore, not unlawfully detained during that time, and that the United States was not liable to indemnify the owners for detention of the vessel during that period. Later, however, the Zeelandia withdrew the application for bunker license and thereupon made application for clearance with the bunkers which she Lad on board when she came into the American port, which •application for clearance was denied. We held that in such circumstances the ship was then entitled to clearance as she was not taking anything out of the country and that the withholding of clearance and the consequent detention of the vessel constituted an illegal detention which obligated the United States to indemnify the owner for damages sustained. The present case comes within the rule announced by the court with respect to the first period, during which the Zeelandia was detained. The holding of the court with reference to the latter part of the period during which the Zeelandia was detained is not applicable here, for the reason that the record in this case shows that the application *342 for license for stores and supplies was never withdrawn; that the ATbyn was unable to sail without such stores and supplies, and that no application for clearance was ever made in full compliance with existing statutes and regula-lations in order that the vessel might clear and sail without the needed ship’s stores and supplies. Our view that the Albyn was not unlawfully detained is supported by the opinion of the Arbitrator in the arbitration between the United States and Sweden, Department of State Arbitration Series No. 5 (6), pp. 60-T8, which involved a claim for alleged unlawful detention of the Kronprins Gustaf Adolf and the Pacific. In that case the Arbitrator, Eugene Borel, ruled July 18,1932, that the United States had the indisputable right to prohibit the exportation of articles of merchandise even though vessels were prevented from sailing by reason of the prohibition; that the United States was under no obligation to enable vessels to sail; that a vessel was not illegally detained unless and until the application according to laws of the United States had been made to the collector of customs for clearance and clearance had been illegally refused, and that the purpose and effort of the United States to bring the Swedish vessels there involved into the service of the United States were immaterial to the question whether the vessels had been illegally detained, so long as the United States acted within the limits of its rights. In the case of the Schooner Exchange v. McFaddon et al., 7 Cranch. 116, 136, 144, the court said:
The jurisdiction of the nation within its own territory is necessarily exclusive and absolute. It is susceptible of no limitation not imposed by itself. * * *. * * * when merchant vessels enter for the purposes of trade, it would be obviously inconvenient and dangerous to society, and would subject the laws to continual infraction, and the government to degradation, if such individuals or merchants did not owe temporary and local allegiance, and were not amenable to the jurisdiction of the country.
In Cunard Steamship Company, Ltd., et al. v. Mellon, 262 U. S. 100, 124, the court said:
A merchant ship of one country voluntarily entering the territorial limits of another subjects herself to the jurisdiction of the latter. The jurisdiction attaches *343 in virtue of ber presence, just as with other objects within those limits.
In Hamburg-American Steam Packet Co. v. United States, 250 Fed. 747, the court, at page 760, said:
In the United States the power to regulate commerce with foreign nations and among the several states is vested in Congress, and that body has the right to determine the conditions under which ships, or persons, or merchandise may enter or depart from the ports which it has established, and those conditions must be conformed to. The ship before it leaves port must obtain its “clearance” from the collector of the port. Clearances have a history in the maritime law extending over hundreds of years. A clearance is an important document, even in time of peace. It is particularly so in time of war. It certifies to the fact that a vessel has complied with the law and is authorized to leave port.
We are of opinion that the War Trade Board, acting for the United States, had reasonable cause or ground to delay issuing licenses for ship’s stores and supplies. This was a war period and the regulatory statutes, Executive orders, and the regulations were war measures, and what might be reasonable or proper cause in peacetime does not, we, think, establish standards for wartime requirements. United States v. Diekelman, 92 U. S. 520, 525-528; The Apollon, 9 Wheat. 362, 373; The Thompson, 3 Wall. 155 (French Steamship); The Olinde Rodrigues, 174 U. S. 510, 535.
It is argued on behalf of plaintiff that the ship itself was the object of detention because other sailing vessels bound upon substantially similar voyages were granted licenses for cargoes and supplies, but we do not know the circumstances or reason which prompted the War Trade Board to grant those licenses. There is some evidence that facts and circumstances surrounding the sailing of those vessels were different and more favorable than those which obtained in respect of the Finnish sailing vessels.
It is further argued that since the charter of the ATbyn was approved and license for the cargo promptly approved and issued the delay in granting “bunker” license was unjustified and was for the sole purpose of detaining the vessel. We think not. The charter was approved subject *344 to the charterer’s securing a cargo license from the War Trade Board, and the cargo license was granted and issued by the Board and renewed from time to time, subject to revocation without notice and subject to all regulations of the Board, including those relating to “bunker” license. Without this license, clearance could not be obtained, and the approval of the charter and license for the cargo was only preliminary to the final and important decision which the War Trade Board was called upon to make.
Upon the facts disclosed and for the reasons hereinbefore mentioned, we hold that while the Finnish sailing vessel Albyn was detained by the United States, such detention was not unlawful.
The parties submitted evidence with reference to all the questions specified in section 2 of the jurisdictional act, and those questions have been briefed and argued. While it is not necessary in view of our conclusion that the Albyn was not unlawfully detained to discuss in this opinion the question of the amount of damage to which the owner would be entitled if the Albyn had been unlawfully detained, we have set forth in finding 20 the amount of damage for which the United States would be obligated to indemnify the owner of the vessel if it should be finally held that the vessel was unlawfully detained. This damage of $61,139.62 has been determined after a careful study and consideration of the evidence and in accordance with that which we consider to be of the greater weight. The Conqueror, 166 U. S. 110, 127; The Margaret J. Sanford, 37 Fed. 148; The Bulgaria, 83 Fed. 312, 314; The Tremont, 161 Fed. 1, 2; Soceiété des Voiliers Francais v. Oregon R. & Nav. Co., 178 Fed. 324; The Europe, 190 Fed. 475, 482; The Orion, 239 Fed. 301, 302. The amount found does not include interest, which we think would not be allowable in the circumstances of this case. United States ex rel. Angarica v. Bayard, 127 U. S. 251, 260; Boston Sand and Gravel Company v. United States, 278 U. S. 41; Moore’s International Arbitrations, p. 1445.
The plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.
GREEN, Judge/ and Whalet, Chief Justice, concur.
Whitaker, Judge, took no part in decision of this case.