Loring, J.,
delivered tbe opinion of tbe court:
Tbe petitioner claims compensation for the detention of three steamships, tbe United States, tbe Ocean Bird, and tbe St Lawrence, in the harbor of New York by tbe orders of tbe President. And we find the facts to be:
That in May, 1855, tbe steamships, tbe United States and Ocean Bird, were in tbe harbor of New York fitted and ready for sea.
That the United States was under a charter-party made tbe 18th of April, 1855, between tbe petitioner, of tbe one part, and Henry L. Kinney, Joseph W. Fabens, and Fletcher Webster, of the other part, to carry five hundred passengers from the port of New York to tbe port of San Juan de Nicaragua, for the sum of twenty thousand dollars, and one-half of tbe excess over that sum, if any earned by said vessel on said voyage.
That on tbe first Tuesday of April, 1858, Henry L. Kinney and 'Joseph W. Fabens were indicted by tbe grand jury for tbe southern district of New York for setting on foot a military enterprise against the republic of Nicaragua, and were arrested and were held to bail by the United States district court for said district.
That on the 30 th of April, 1855, by letter of that date, the petitioner wrote to Mr. Marcy,'informing him he had chartered the steamship United States to Col. Kinney and his associates, to convey him and bis friends to San Juan de Nicaragua, and asking if tbe government considered “this proceeding legitimateMr. Marcy, in reply, informed tbe petitioner that a gentleman connected with Col. Kinney “had been at Washington to represent” it to be a mere emigration movemement; and added, “ others present it to our notice in a different light.” Mr. Marcy further stated that judicial proceedings were pending, and therefore declined to express any definite opinion on the subject; and, in a further correspondence, referred the petitioner to the United States district attorney at New York.
That on or about the 7th of May, 1855, the petitioner applied at the custom-house, in New York, for a clearance for said steamship United States for the port of San Juan de Nicaragua, and it was refused; that some days afterward he applied for a clearance of said ship to Havana, and it was refused; and on the 15th of May, 1855, he applied for a clearance of the Ocean Bird for Havana, and it was refused. The collector stated that he was instructed not to clear said vessels;
Previous to the 25th day of May, 1855, the steamships United States and Ocean Bird were in their dock ready for sea, and by tele *339 graphic orders from tlie President of the United States, Captain Boar-man, of the United States navy, on the 24th of May, 1855, placed a naval force in the vicinity of said steamships, and prevented their departure from, the harbor of New York. On the twenty-fifth day of May the President, by orders in writing, informed Captain Boarman that he had been officially informed that indictments had been found against Henry L. Kinney and John W. Fabens in New York, and against Henry L. Kinney in the eastern district of Pennsylvania, charging thpm with setting on foot a military expedition against the republic of Nicaragua; and that the steamship United States had been chartered to them and Fletcher Webster for the purpose of being employed in said military expedition, and was about to sail from New York to carry them, their followers and associates enlisted or engaged for said expedition, to their destination in Nicaragua. And the President commanded Captain Boarman as follows: “You are, therefore, hereby directed and empowered, in virtue of the eighth section of the act of Congress, approved the 20th of April, 1818, to take all proper measures and to employ such part of the naval force of the United States under your command as may be necessary to prevent the carrying on of such expedition or enterprise, and especially to prevent the departure of said steamer United States from beyond the limits of said district of New York.” And by an order, dated May 30th, 1S55, the President referred to his order of May 25th, 1855, and commanded Captain Boarman as follows : “ You are hereby directed to consider that order as also embracing any other vessels within that district, which have been or may be chartered or fitted out for a similar purpose by the same parties who chartered the United States.”
By the refusal of the clearances, and under the orders aforesaid, the said steamship Ocean Bird was detained in the harbor of New York .from the sixteenth day of May to the tenth day of July, 1855, inclusive. And the said steamship United States was so detained from the 20th day of May to the 10th day of July, 1855, inclusive.
That the demurrage of the Ocean Bird, as a compensation for her detention, if allowed, should be estimated at nine hundred dollars per day. And the demurrage of the United States at eight hundred dollars per day.
That the charter-party of the United States above mentioned as made between the petitioner and said Kinney, Fabens, and Webster, was abandoned by the parties interested, by mutual consent, on account of the detention of the steamship United States, as above set forth, by *340 the government. And that the voyage provided for by the charter-party would have occupied twenty-five days.
It was contended for the petitioner in the lucid and very able argument of his counsel that the act of the President, under the eighth section of the act of 20 April, 1818, (3 Stat. 447,) was the act of the state, and a taking of the private property of the petitioner for public use. But we think the facts found do not support this claim. They showed that the vessels were prevented from leaving the harbor of New York, and thus were, in. the language of the statute, And under it, “detained,.” And .we think, as argued by the solicitor for the United States, that this was neither a taking nor a use, as those words are used in the Constitution, where they imply and require the exercise by the state of a proprietary right, for a greater or less time in the property taken. Then the detention was at the most an arrest under the statute, which was for the case “ due process of law.” And an arrest under process of law never makes a contract, and cannot without malice, which is not shown here, make a tort. Therefore the loss and inconvenience the petitioner has suffered are damnum, absque injuria, which is not a ground for an action at law.
On the facts found we are of opinion that the defendants are entitled to judgment, that they go without day, &e.; and it is so ordered.