Williams, Judge,
delivered the opinion of the court:
The material averments in the petition in substance are: That the plaintiffs are the owners of ten acres of land, *563 known as Lorewood Grove, bordering on the south bank of the Chesapeake and Delaware Canal, and lying substantially between two parallel lines along two creeks or runs; that the mouths of the said two creeks were .each about 200 yards in width at their junction with the canal and extended back a distance of 1,000 feet; that the said mouths formed natural coves, bays, or basins, making a natural harbor for water craft; that at the time plaintiff acquired ownership of the said grove the Chesapeake and Delaware Canal was a private waterway connecting the Delaware Eiver with the Chesapeake Bay; that the said canal was a lock canal, one lock with a lift of 7.6 feet being located at Delaware City, the Delaware River entrance of the canal, and one lock with a lift of 10 feet at Saint Georges, Delaware, 4.3 miles from Delaware City; that these two locks together raised the level of the canal to an elevation of 17.6 feet above the mean low water of the Delaware River; that the said canal had been in existence for more than 60 years, and was navigable for boats, ships, and other craft, drawing not more than 9 feet of water, the said canal having a channel 9 feet deep and 50 feet wide; that the natural contour, location, and arrangement of the plaintiff’s land, with the two streams entering into the canal as aforesaid, lent naturally to the development of a summer resort or bungalow colony and had been so used for more than 30 years by the plaintiffs and their predecessors in title; that for more than 30 years four landing wharfs or piers had been erected on plaintiffs’ land which projected into the canal -and were used by vessels passing through the canal from Philadelphia to Baltimore in the receiving and discharging passengers and freight, and that the said Lorewood Grove was a regular port of call and had been for the period mentioned, and that for the same period of time the two basins had been used as harborage for water craft, boats, etc., and that upon the .said land at the intersection of the canal with one of the creeks mentioned a store building approximately 30' x 35' in size had been erected, at which was sold the, usual supplies required for summer residents and by passing water craft; that in the said creeks and the bayous there abounded many varieties of game fish Avhich afforded an added attraction to the plaintiffs’ property *564 as a recreation camp and vacation center, and that subsequent to the acquisition of title to the said premises plaintiffs had erected numerous bungalows and sleeping cabins and cottages for the accommodation of those desiring to use the grove for vacation and summer recreation.
It is further alleged that under the authority of various acts of Congress, particularly the acts of August 8, 1917, and March 2, 1919, the United States acquired the said canal by purchase from -the Chesapeake & Delaware Canal Company and thereafter proceeded to enlarge, reconstruct, and alter the said canal, changing it from a lock canal with a 9-foot channel of the width of 50 feet to a sea level canal with a channel 12 feet deep at mean low water, with a bottom width of 90 feet; that the work of altering the said canal and deepening it to a sea level canal resulted in the lowering of the canal level a distance of approximately 18 feet below the former level, and resulted in taking away the water which previously made access to the plaintiffs’ land convenient and practical, and further resulted in the draining of the water out of the bays or harbors heretofore described, destroying the harbors they formerly afforded.
It is particularly averred that in addition to the general injury and destruction of the former use of the plaintiffs’ property, the alteration of the canal and the lowering of the water resulted in the following specific injuries:
(a) The water level of the canal was lowered a distance of approximately 18 feet, and the same subjected to the rise and fall of tides, rendering the grove inaccessible by either the small pleasure water craft or the larger ships.
(b) The four piers, landings, or wharfs formerly used by the small water and pleasure craft were taken away.
(c) The basins or harbors at the mouths of the East and West Branch Creeks on each side of plaintiffs’ land were drained out and taken away.
(d) The game fish abounding in said creeks and basins: were driven away and lulled, thereby taking away and' destroying plaintiffs’ right of fishery.
(e) The use of the large'wharf or landing pier at which the passenger and freight steamboats traveling through the- *565 canal previously made a port of call and received and discharged passengers and cargoes, and used as a. terminus for excursions from the city of Philadelphia, was taken away and such use of the grove destroyed. - ■ - ■
(f) The lowering of the level of the canal resulted in the-taking away or drying up of the water of two wells which formerly furnished the water supply of the grove.
(g) In the unwatering of the shores of Lorewood Grove the Government took away all practical and convenient access by water and left the former shores or banks at a precipitous height of 18 feet above the new level of the canal.
That the physical changes made by the United States as aforesaid further destroyed the approach to the plaintiffs’ shore line along the canal for the distance of its entire frontage along said canal, to wit, approximately one-half mile, and rendered the land of the plaintiffs inaccessible from the water and unfit for the use for which it had prior theretofore been used, which, plaintiffs aver, was the most valuable and best use of said land; that in addition the United States Government, by its agents and employees, in the course of its work in widening and deepening the canal pumped the mud and silt and sand out of the bottom of the canal into the harbor mouths of said East and West Branch Creeks, thereby so increasing the shallowness as to absolutely destroy said streams for the purpose to which they had been theretofore used, as a consequence of which all the fish were driven out or destroyed. That the United States Government, acting further by its agents, servants, and employees, did pile other mud, silt, and sand out of the bottom of the canal along the shore of plaintiff’s land, covering up and destroying the wharfs and docks and casting upon plaintiffs’ land an undue burden to which it had not been subjected before.
Plaintiffs aver that by the defendant’s conversion of the private lock cañal into a sea-level public waterway the defendant, in addition to the damage and injury above set forth, deprived the plaintiffs from, all the rights, heredit-aments, appurtenances, benefits, easements, advantages, and servitudes which they held, owned, and possessed as riparian *566 owners of land bordering on said former private waterway, viz, the Chesapeake and Delaware Canal, and for the taking of which no compensation has ever been made.
Finally it is alleged that as a consequence of the acts of the taking of plaintiffs’, property, as averred, the grove was destroyed for the uses to which it had been put, which, it is alleged, was the best and probably the only use thereof, and that the plaintiffs have sustained damages to the extent of $30,000, which plaintiffs under the laws of the United States, and the fifth amendment to the Constitution, are entitled to recover.
The defendant demurs to the- foregoing petition on the ground that the facts alleged do not state a cause of action against the United States, in that there was no taking of the plaintiff’s property within,1 the meaning of the fifth amendment, and that the damages alleged were an incidental consequence of work done by the defendant on a project for the improvement of navigation, authorized by law, for which the Government is not liable.
The law is well established that acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are not a “taking” within the meaning of the constitutional provision. Transportation Company v. Chicago, 99 U. S. 635; United States v. Carver et al., 278 U. S. 294; Graham v. United States, 2 C. Cls. 327.
In order to come within the constitutional provision there must be shown to have been an exercise, by the United States, of a proprietary right for a greater or, less time, in the property taken. A taking within the meaning of the amendment must have been an intentional appropriation of the property to the public use, and the appropriation must have been authorized by law. Atwater & Co. v. United States, 275 U. S. 188; Transportation Co. v. Chicago, supra. Thus it has been held that when the Government of the United States, by the construction of a dam or other public works, so floods lands belonging to an individual as to totally destroy its value there is a taking of private property within the scope of the amendment, United States v. Lynah, 188 U. S. 445; Pumpelly v. Green Bay Company, 13 *567 Wall. 166, upon the theory that when the Government, by the construction of a dam or other public works so floods lands belonging to an individual as to* substantially destroy their value, there is an actual taking and appropriation of the lands. To the same effect is United States v. Cress, 243 U. S. 316.
On the other hand, it has been repeatedly held, and the correctness of the rule is not open to question, that where land is merely damaged by the impairment of its use or value as an incidental consequence of the lawful exercise of power by the Government there is no taking. This is especially true in cases where the damages are incidental to work done by the Government in projects relating to the improvement of navigation. Tompkins v. United States, 45 C. Cls. 66; Sanguinetti v. United States, 55 C. Cls. 107; Natron Soda Company v. United States, 54 C. Cls. 169; Horstmann v. United States, 54 C. Cls. 214, affirmed 257 U. S. 138; Southern Pacific Co. v. United States, 58 C. Cls. 428, affirmed 266 U. S. 586.
In the Tompkins case, supra, the court said:
“ If, therefore, the land is merely damaged by the impairment of its use or value as an incidental consequence of the lawful exercise of power by the Government, there is no taking.”
In Horstmann v. United States, supra, the plaintiff claimed that because of the construction of certain irrigation works by the United States the body of ground water in the section covered by the project rose and caused rise of water in lakes, which prior to that time were used to extract soda water. It was held that while there was a casual connection between the work of the Government and the waters in the lakes damaging the property of the plaintiff there was no taking of the property within the meaning of the fifth amendment.
In the Southern Pacific Company case, supra, the Government, under the authority of Congress, constructed a jetty or breakwater at the mouth of a bay, the effect of the construction causing the waters of the ocean to break with such force against plaintiff’s railroad, located on land bbrdering on the bay, as to wash away and destroy a section thereof. *568 The court held the injury was consequential, and that the ■Government was not liable for damages resulting therefrom.
In Sanguinetti v. United States, supra, it was held that where Government works for the improvements of waterways have caused deposits of debris on private lands, requiring labor to remove; where trees have been washed out and others damaged; and a house rendered inaccessible during •flood periods, the injury amounts to a depreciation or consequential damages, and not to an appropriation of property by the United States under the fifth amendment.
In Gibson v. United States, 166 U. S. 269, the Government, under an act of Congress authorizing an improvement in the Ohio River, constructed a dyke, not on the plaintiff’s land, but so as to impair the waterway between the' channel of the river and plaintiff’s wharf, and, except in high water, rendered it inconvenient and almost impractical for use as a shipping point. After citing cases where it had been held that permanent flooding of private property may be regarded as a “ taking,” the court said:
“In those cases there was a physical invasion of the real •estate of the private owner, and a practical ouster of his possession. But in the present case there was no such invasion. No entry was made upon the plaintiff’s lot. All that was done was to render for a time its use more inconvenient.”
In the instant case the work done by the Government, •complained of by the plaintiffs, consisted in the conversion of a lock canal into a sea-level canal for the improvement •of navigation. There was no entry upon or invasion in any way of the plaintiffs’ property, none of which was taken •or appropriated by the Government. The alleged damages resulted from the necessary lowering of the water level in the canal, as a consequence of which the plaintiffs’ lands were left higher and farther from the water. Whatever damages the plaintiffs may have sustained by reason of the improvement were incidental to the work done in the improvement of the canal. The work was authorized by Congress and was performed by the defendant in the legitimate, exercise of its governmental powers. Although the work may have depreciated the value of the plaintiffs’ prop *569 erty and impaired its use, the injury is consequential, and the Government is not liable for damages arising therefrom.
There was no taking of the plaintiffs’ property within the scope of the fifth amendment. The petition fails to state a cause of action, and the demurrer is sustained. It is so ordered.
Whaley, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, Ghief Justice, concur.