Booth, Chief Justice,
delivered the opinion of the court:
The issue in this case arises upon defendant’s demurrer to plaintiffs’ petition. A number of plaintiffs allege title to a tract of 1,200 acres of land lying in the bed of the Ohio *792 River, a navigable stream, and in paragraphs five and six of the petition aver their cause of action as follows:
“ 5. Plaintiffs state the defendant, United States, acting through its duly appointed and constituted agents and officers, and particularly the Secretary of War, did heretofore construct and thereby complete in November 1927 a certain project known as ‘Dam 41’ and its appurtenant structures at Louisville, Kentucky, upon said tract of land belonging to plaintiffs with a crest elevation of 420 feet, of which 418 feet elevation was intended for the maintenance and improvement of navigation in the exercise of its sovereign and dominant tenement aforesaid, and of which the additional elevation of 2 feet, and any incident structures, were intended for the impounding of water for use in the commercial generation of electrical energy and power; that said defendant, United States, did further license and thereby contract with a private corporation that said corporation should be entitled for fifty years to use said impounded water for generation of electrical energy and power for commercial purposes and sale; and that said defendant, United States, agreed to receive, and said corporation to pay, on and after January 1, 1928, the sum of $95,000 each year for twenty years, and further sums as thereafter determined, for the use ox said dam and for amortization and return of its additional cost embraced in the extra height of two feet provided for impounding water as aforesaid, and further additional sums each year as administrative •costs, and the defendant, United States, has since collected and received said payments.
“ 6. Plaintiffs state said additional height to said dam and the consequent impounding and use of water for generation of electrical energy and power, are and were apart from and not in exercise of the aforesaid dominant tenement easement and right of defendant United States to use said tract of land for the maintenance and improvement of navigation, and are and were additional burdens upon the lands and the servient tenement therein belonging to plaintiffs, and thereby constitute the taking and appropriation of property and rights of plaintiffs for said special purposes.”
No compensation has been paid the plaintiffs for their lands and a judgment is herein sought for $1,900,000, based upon the income to be derived by the United States for the first twenty years under the contract above mentioned.
The petition challenges the lawful right of the United States to erect a dam in the bed of a navigable river of an *793 elevation in excess of that said to be required in aid of navigation without incurring liability to compensate riparian landowners as and for a taking of their lands in the bed of the river to the extent such increased volume of water results in a lease by the United States to private parties of the use thereof for power purposes.
The case, we think, does not exact extended discussion. A great number of cases are cited in briefs of counsel, all of which exhibit long-established and familiar precedents relating to the right of the United States in making river improvements in aid of navigation, and what, if any, rights to compensation accrue thereby to riparian or other landowners upon an alleged taking of their lands. The plaintiffs rest their contentions upon the case of Ford v. Little Falls Fibre Co., 280 U.S. 369, confidently insisting that both as to facts and law the instant case is similar and governed thereby.
The wide divergence as to facts between this and the Ford ease is, we think, apparent. The United States was not a party to the Ford ease; the litigation involved two private parties and their respective rights, one insisting upon a lawful right to increase the height of a Federal dam erected primarily in aid of navigation under a granted license from the Federal Power Commission to utilize the surplus water produced by the erection of the dam without incurring liability for an injury occasioned another, and a prior user of the same waters three miles upstream from the dam.
The complaint lodged against the Ford Company, and which the New York courts and the Supreme Court sustained, was that the erection of dashboards by the Ford Company upon the crest of the existing Federal dam, although done under a license to use the surplus waters, was an independent act of the licensee, designed not in aid of navigation but to increase the volume of water theretofore impounded by the dam in such a way as to facilitate and increase water power for the operation of the Ford plant, it being conceded that what the Ford Company did destroyed the power plant of the Little Falls Fibre Company. The license to the Ford Company granted under the provisions of the Federal Water Power Act (41 Stat. 1063) to use surplus water from the dam proper, i.e., without dashboards, *794 jin the development of hydroelectric power, was not invalidated. The licensee, the Ford Company, was held to have accepted it under the provisions of the Federal Water Power Act, one of which provisions, among others, i.e., section 27, reads as follows:
“ * * * nothing herein contained shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.”
The plaintiffs, as stated in defendant’s brief, do not allege possession of a manufacturing plant or that they ever took, or had the means of taking, water power from the Ohio. River, or in any way under State laws exercised a granted right to avail themselves of water power as the Little Falls Company had done.
None of plaintiffs’ fastlands have been invaded by the United States. The claim made is restricted to a right of compensation for the taking of their qualified title to lands in the bed of a navigable stream by the erection of a Federal dam in aid of navigation, which resulted in producing a situation wherein surplus waters developed by the dam were licensed for use to another. The allegations of the petition in effect state that a change in the elevation of the crest of Dam 41 increasing its height two feet, was intentionally done to enable the United States to engage in the business of granting licenses to utilize the surplus waters produced by such change. The lawful right of the United States so to do is not questioned. All that is asked is compensation for the alleged imposition by the United States of burdens upon the lands involved, in excess of those required to improve the river in aid of navigation.
That the authorization for and primary purpose of the United States in constructing the dam were in aid of navigation is not traversed, and the court is not at liberty to infer that simply by an increase in the elevation of the dam, the United States intended as a primary proposition to construct a dam, not only in aid of navigation but for the development of water power as well, in the face of congres-- *795 sional legislation to the contrary. As a matter of fact, reflected by numerous acts of Congress, the legislative policy has consistently been to increase the navigability of the Ohio Kiver at and around the falls at Louisville, Kentucky,, and all that has been done in pursuance of this legislation has been done with an intent and primary purpose to aid navigation. The courts may not question the expressed legislative purpose, for as said in the case of United States v. Chandler-Dunbar Co., 229 U.S. 53, 72, “ We need not consider whether the entire flow of the river is necessary for the-purposes of navigation, or whether there is a surplus which is to be paid for, if the Chandler-Dunbar Company is to be excluded from the commercial use of that surplus. The answer is found in the fact that Congress has determined that the stream from the upland taken to the international boundary is necessary for the purposes of navigation.”
We think this case is governed by the case of United States v. Chandler-Dunbar Company (supra), and the demurrer will be sustained and the petition dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; and GeeeN, Judge,. concur.
LittletoN, Judge, took no part in the consideration or decision of this case.