Booth, Qhief Justice,
delivered the opinion of the court:
The plaintiff is a Pennsylvania corporation engaged in the manufacture and sale of glass novelties. The fuel used m its manufacturing plant is natural gas obtained in part from a gas well located in Monongalia County, West Virginia. Plaintiff acquired title to this gas well known as “Pomeroy #2” under a written lease from the owner of the soil, and it is for the value of this well, alleged to have been taken by the defendant, that this suit is brought.
In June 1926 the defendant, in aid of navigation, constructed in the Monongahela River a new lock and dam, identified as Dam #8, in place of a preceding lock and dam,, and thereby raised the pool level created by the old dam 13.2 feet, or to 793 feet above mean sea level. Later on, the defendant added flashboards to the existing dam, increasing-the pool level to the total extent of 14.2 feet, or 794 feet above mean sea level.
The plaintiff contends that as a result of thus increasing the pool levels noted water backed upon the lands where its well was located, poured into the same, and destroyed it entirely. In order to ascertain the issue of liability as for a taking of plaintiff’s well, it is,essential to state pertinent facts disclosed by the findings. There was no gas in the well available for use on and after January 21, 1927, and beyond a doubt the well was rendered valueless by at least 300 feet of accumulated water in it. This fact, however, does not of itself determine the question as to whether *669 the acts of the defendant amount to a taking for which just compensation must be paid, or whether the damages suffered were consequential in their nature and hence clamnum absque injuria.
It is admitted by the plaintiff that a pool level of 794 feet, the highest brought about by the construction of the dam and flashboards, did not preclude the taking of gas from the well; the most that it did was to liquefy the ground around the well and render it soft and infirm. The first serious inundation of the well occurred on or about January 21, 1927, during a flooded condition of the river, on which date the pool level was materially increased above normal..
On this date it became necessary for the plaintiff to close the valves controlling the output of the well, as they were covered by water. On February 7th or 8th, 1927, an additional flooded condition of the river obtained, and an examination of the well and piping connected therewith disclosed broken valves and line pipes, ail of which were submerged-, under water and floating ice. The following summer, obviously after the floods had receded, the plaintiff bailed out about 300 feet of accumulated water, and while the gas-flowed to some extent its volume was insufficient to warrant production.
With these facts in view, it seems apparent that the loss which plaintiff suffered is not to be attributed to the construction of lock and dam #8, but to two floods which, occurred after the dam had been constructed, and which were but recurrences of many of the same nature, both before and after the completion of the new dam. The defendant possessed the lawful authority to construct the new-darn, and while liability attaches for property taken to-accomplish the same, it does not extend to consequences which follow thereafter which may not be directly attributed to its presence in the river. The construction of the- dam did not directly cause the floods. The intermittent-increase in pool levels is traceable to other sources, for at no time did the defendant by erecting the dam contemplate-a higher pool level than 794 feet. In normal times this was the precise situation. The record clearly establishes that: *670 save for the floods plaintiff’s well would have yielded its normal and maximum production.
This court has had a great number of cases involving 'the issue herein, and we will not attempt to review them all, In Court of Marion County, West Virginia v. United States, 53 C. Cls. 120, the precedents of both this and the Supreme Court are reviewed exhaustively. Chief Justice Campbell, in a concurring opinion, said (pp. 152-153) :
“When damages are sought, as in the instant case, because the elevation of flood waters is supposed to have been heightened by reason of the dam furnishing an obstruction to their escape, it is manifest that we must go beyond the ■adjudicated cases to sustain a recovery. Did the Government appropriate the plaintiff’s roads or bridge by the erection of a dam which, with water standing at pool level, had no injurious effect on the roads or bridge? Did the Government impliedly promise to pay damages to persons owning lands along said river if they could show that after the dam was erected floods came, and that the dam contributed in some more or less remote degree to raise the elevation ■of the floods at particular places, whereby their lands were injured? This court has no jurisdiction of actions for -damages sounding in tort; and, as stated aboA^e, the promise which the law implies, and of which this court may have •cognizance, is that the Government Avill pay for that prop-erty which it takes, or of which it deprives the OAvner, for public uses.
“The plaintiff alleges a taking of its property, but the 'facts show that its roads Avere injured by flood waters, in times of freshet, coming down the Monongahela River, and that its bridge across Paw Paw Creek, a tributary of said river, Avas washed aAvay by a heavy freshet in that creek. The plaintiff was not a riparian owner even except possibly as to the bridge and its abutments.”
See also Tompkins v. United States, 45 C. Cls. 66; Vansant v. United States, 75 C. Cls. 562; Mills v. United States, 46 Fed. 738.
The petition is dismissed. It is so ordered.
Whalet, Judge; Williams, Judge; Littleton, Judge; and GREEN, Judge, concur.