Whaley, Judge,
delivered the opinion of the court:
The plaintiffs bring this suit to recover just compensation for the alleged taking by the defendant of its lands and buildings erected on the south bank of the Ohio River about six miles above Louisville, Ky. It appears that in 1921 W. F. Woodruff was the owner of a tract of land con *10 sisting of about 91 acres bordering on the Ohio Eiver. The descriptions in the original grants give the east and west boundaries as extending to the “bank” of the Ohio River, with the northern boundary following the meanders of the river. The fast land of plaintiffs was at an elevation above mean sea level of 437.6 feet at the west end and approximately 439.7 feet at the east end and 439.5 feet at Edgewater Garden hereinafter described. At this period the Government had raised the waters of the Ohio at this point to an elevation of 412 feet above mean sea level. The Ohio was at all times a navigable river. Commencing at the edge of Woodruff’s fast land there was a precipitous bank of 20 feet and at the foot of this bank the shore gradually sloped to the low water about eight feet.
Woodruff in 1921 commenced and in the following year completed the erection of a reinforced concrete building which was thereafter known as Edgewater Garden. This building faced the public road and its front was slightly within the embankment. It extended from the edge of the bank over the river 62 feet and along the river some 98 feet. The lowest, or ground flood, was at an elevation of 419.14 feet; the next floor, which accommodated the boiler room and a veranda, was at an elevation of 429.04 feet; the main floor, where the oflices and dining-room were situate, at an elevation of 438.1 feet, and the next floor, which was used as a ball room, at an elevation of 448 feet. The walls were tied into one homogeneous mass. About one-fourth of the building, the part toward the river, was supported on reinforced concrete piers, sunk into the ground at varying depths, the lowest five or six feet below the ground surface, depending upon the nature of the soil, with footings resting upon gravel sufficiently compacted to cause the sharp rebound therefrom of iron weights. No piling was used under the building. The ground floor was adapted for the storage of canoes when the water was below a level of 419.14 feet. From the building line riverward the ground was artificially cleared of vegetation, leaving a clear beach of sand and gravel down to the water’s edge. Vegetation, consisting of trees and *11 shrubs, was allowed to remain back of the riverside building line substantially as it existed prior to construction.
Upon its completion Edgewater Garden was operated by the decedent as a public pleasure resort, for profit. Among its attractions were canoeing, bathing, swimming, dancing, dining, water sports generally, and the recreation that is associated with beach life on an inland river. It was easily accessible by automobile and trolley. The above description is set out fully in order to show that the design and plan of this structure was made with the knowledge that the Ohio River rose to certain stages at various times and that the ground plan where the boiler room was located was 18 feet above the mean elevation of the river to Avhich navigation had been made by the Government at that time. The lowest floor, where boats were kept, was purposely designed for the passage of the water when the river rose to an elevation of 419 feet. The boiler and veranda floors were ten feet higher, so that the river would have to rise to 429 feet before this floor was affected.
As far back as 1820 Congress undertook to improve the Ohio River for navigation, and from time to time passed authorizations and made appropriations for its increased navigability. Canals were provided around the falls on both the Kentucky and Indiana sides. In 1909 Dam 41 at Louisville was authorized, which raised the pool level back of it to 412 feet, and this level extended along the Woodruff tract.
Commencing in 1925, the Government undertook to raise the elevation of Dam 41 to 420 feet, in order to provide a 9-foot channel in the Ohio River, and in so raising this dam provided an elevation which would also provide water power. The primary purpose of the elevation of the dam was to increase the navigability of the river and sale of the surplus water power was purely incidental. Buchanan et al. v. United States, 78 C. Cls. 791; certiorari denied by the Supreme Court, 294 U. S. 723.
When the pool level was raised to 420 feet the beach along the Woodruff tract was covered by water and there was a continuous elevation of the river to the first or boat floor of *12 the building. There has been no destruction or material impairment of the building. It is now being used as a pleasure resort. Only the shore, or bathing beach, which gave an added attractive feature to this amusement place, was taken away to the extent of eight feet. By this elevation of the pool level the water of the river was raised to the bottom of the precipitous bank which rose twenty feet to the edge of the Woodruff fast lands. By the elevation of the river to 420 feet were the lands of plaintiffs taken by the Government? This raises the question of the title to the strip of beach over which the water was raised. If the title to the shore is in the plaintiffs, free of any servitude to the Government for the purposes of navigation, and the Government has so raised the waters of the Ohio that this beach is destroyed, then there has been a taking of plaintiffs’ property for public use, for which just compensation should be paid under the fifth amendment to the Constitution. This involves the question as to the nature of the title which the plaintiffs had in the shore and banks of the river. The artificial improvements do not change the fact that the Ohio is a navigable river and as such subject to Federal jurisdiction. Ex parte Boyer, 109 U. S. 629, 632; The Robert W. Parsons, 191 U. S. 17, 28.
In applying the constitutional provision it must be kept in mind that there is a marked distinction between a taking and mere resulting damage. Bedford v. United States, 192 U. S. 217.
Where the Government exercises its paramount power to control and improve nagivation and a riparian owner is merely damaged, there is no redress under the constitutional provision providing just compensation for the taking of private property for public use. Gibson v. United States, 166 U. S. 269.
It is unquestioned that the Government owns the bed of a navigable stream, and that brings us to the question as to what was the bed of the Ohio River at this location.
Being a navigable stream in Kentucky the title of the plaintiffs may have been to the low-water mark. However, this was not an absolute but a qualified title subject to the *13 paramount power of the National Government to improve the bed of the river for navigation purposes. It has been decided too often to require citations of authority that the National Government has unrestrained power for navigation purposes to improve rivers and harbors.
The sole question remaining for decision is what is the bed of the Ohio River at the site in question.
The authorities seem to be in accord that the bed of a river does not mean that portion which is continually covered by water, but it consists of banks, shores, bed, and water.
In the case of State of Alabama v. State of Georgia, 23 How. 505, 516, the court laid down a rule which has been followed by the courts in most cases. The court said:
The bed of the river is that portion of its soil which is alternately covered and left bare, as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean stage during the entire year, without reference to the extraordinary freshets of the winter or spring, or the extreme droughts of the summer or autumn.
The paramount title of the Government in the bed of a stream embraces not only that portion continuously submerged but also that portion of the soil above low-water mark and below the ordinary and usual high-water mark known generally as the shore and banks of the stream. Below ordinary high-water mark on a navigable river the owner’s title to the bed of a river is subservient to the greater title of the Government for navigation improvement without violating the fifth amendment to the Constitution. Gould on Waters (3rd Edition) 45; Haight v. City of Keokuk, 4 Iowa, 199; Paine Lumber Co. v. United States, 55 Fed. 854.
In Barr v. Spalding, 46 Fed. (2d) 798, which involved the determination of what was the bed of the Ohio River in the State of Kentucky and what were the rights of riparian owners due to damage suffered from the raising of the level of Dam 41, Judge Dawson, District Judge, in a well-considered opinion, held:
A riparian owner’s title to the bed of a navigable stream is subordinate to the paramount power of the National Gov *14 ernment to control and improve the stream for navigation purposes; and that this servitude in favor of the Government extends, not only tó that portion of the soil continuously submerged by the stream in its natural state but also to that portion of the soil above low-water mark and below the usual and ordinary high-water mark.
The plaintiff in its brief lays stress, on the decision in the case of United States v. Cress, 243 U. S. 316. In that case, due to the elevation of the water in the navigable stream,, the riparian rights in a nonnavigable stream were destroyed. In the instant case the Government raised the level of the stream over the shores and up the sides of the banks, paramount title to which it possessed and to which the title of the plaintiffs was subservient. The facts as found by the court show that the elevation of the stream by the erection of Dam 41 so as to give a pool-elevation of 420 feet does not exceed the ordinary high-water mark and, therefore, no interest of the plaintiffs has been expropriated for which they are entitled to compensation under the Constitution.
The plaintiffs make a claim for damages to business and for destruction of trees and damages to the building — suffice it to say the Government never took the business, Mitchell v. United States, 267 U. S. 341, and the injuries to. the trees and building are consequential in their nature for which no recovery can be had. Vansant et al. v. United States, 75 C. Cls. 562; William Wrigley, Jr., Co. v. United States, 75 C. Cls. 569; Bothwell v. United States, 254 U. S. 231; Southern Products Co. v. United States, 61 C. Cls. 801; De Laval Co. v. United States, 284 U. S. 61, 73; Nitro Powder Co. v. United Stales, 71 C. Cls. 369, 374; Tempel v. United States, 248 U. S. 121.
The petition is dismissed. It is so ordered.
Williams, Judge; Greek, Judge; and Booth, Ghief Justice, concur.
LittletoN, Judge, took no part in the consideration and. decision of this case.