Jones, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover the value of a building and its contents at the time of their destruction during the flooding of the Allegheny Kiver in 1936. In order to bring itself within the jurisdiction of this court, it contends that the defendant is liable for the damages in question for the reason that through the construction of a dam in 1927 and other acts connected therewith the defendant created a condition as a result of which the floodwaters destroyed its building, and that therefore there was a taking of its property within the meaning of the Fifth Amendment to the Constitution.
For many years prior to and including the year 1936 plaintiff owned and operated a steel mill located on the east side, or left bank, of the Allegheny Kiver in Pennsylvania. In 1927 the defendant constructed a dam across the Allegheny Kiver near the lower end of plaintiff’s land. Plaintiff’s plant was in that location at the time and had been there for some 25 or 30 years prior thereto. The land on which the plant was located extended for a distance of approximately 2,000 feet upstream from a point about opposite the dam.
The dam was built to a crest elevation of 745 feet above mean sea level, which was 2 feet below the ordinary high-water mark at that point. The dam was tied into a concrete abutment 100 feet in length which was provided with wing walls extending 25 feet into the river bank. A few months after the completion of the dam, when it appeared that the floodwaters might damage the property of adjacent owners, including plaintiff, defendant constructed a dike 11 feet in height along the river bank, thus bringing the top of the dike to an elevation of 766 feet. This dike extended from the dam approximately 2,500 feet upstream where it was tied into a railroad at an elevation of 765.5 feet. Plaintiff’s plant was located between the dike and hills of considerable elevation to the east thereof. The railroad tracks which had an elevation at the upper end of 765.5 feet were between plaintiff’s plant and the hills. The elevation of plaintiff’s property varied from a low point of 755 to a high point of 762 feet.
*352 On March. 17,1936, an unprecedented flood occurred which raised the waters of the Allegheny River to an elevation of 768.8 feet, which was 7 feet higher than the highest previous flood and 2.8 feet higher than the top of the dike opposite plaintiff’s property. With the overtopping of the dike the floodwaters overflowed plaintiff’s plant, such waters reaching a height of 8 feet in the steel mill and 13 feet in its office building, which was within 3 feet of the eaves. While considerable damage resulted to its contents, the office building itself remained standing until its later destruction as hereinafter shown.
The crest of the flood was reached on March 18, and by the afternoon of the following day it had receded to the extent that not only plaintiff’s plant but also its office building was substantially free from water. As soon as the water began to recede, it was discovered that erosion was taking place along the bank of the river a short distance below the dam. At that time water was flowing around the end of the dam near plaintiff’s office building. The dam was contributing to the erosion by causing an eddying or whirlpool condition in that area along the bank of the river, which was cutting away the bank. By the following morning the erosive action of the river had cut a channel around the end of the abutment between the abutment and plaintiff’s office building. This erosive action continued for several days and, in spite of heroic efforts on the part of the defendant to arrest the erosion, it cut away the land underneath plaintiff’s office building which for the most part fell into the river. One small corner of the building which remained was pushed into the floodwaters to assist in stopping the erosion. Not only was the building lost but almost the entire contents thereof.
Thereafter defendant restored plaintiff’s land to approximately its condition prior to the flood, and also made major improvements to the abutment and to the dike. As a part of this protective work defendant constructed a weir by driving sheet steel piling in a line with the dam across the gap formed by a washout between the abutment and the railroad, a part of which was located on plaintiff’s property, and filled the space between the piling and the existing bank upstream with sand and gravel. The dam and abutment were unharmed by the flood.
*353 On these facts, which we have set out in more detail in our findings, plaintiff seeks recovery.
At the outset it should be observed that the parties are agreed that the dam and abutment were constructed as an aid to navigation on a navigable stream where the Government had a right to build them and that no land taken in connection with their construction is involved. It should be further kept in mind that the dam and abutment were constructed below the level of the ordinary high-water mark, and that the power of the Government over navigation covers the entire bed of a navigable stream, including all lands below ordinary high-water mark. United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co. et al., 312 U. S. 592, decided by the Supreme Court March 31,1941.
What plaintiff claims is the value of its property which was destroyed during the flood of March 1936, on the ground that in effect there was a taking of its property because the presence of the dam in the river contributed to its destruction. It is well established that where private property is taken for public use just compensation must be paid to the owner of such property, but it is likewise true that there is a marked distinction between a taking and mere resulting damage, Bedford v. United States, 192 U. S. 217; Marret, Administrator, et al. v. United States, 82 C. Cls. 1, certiorari denied 299 U. S. 545.
Where, in the making of improvements by the Government within the legal limits of a navigable stream, there is some incidental or consequential damage resulting to the owner of private property, there is no taking of such property by the Government and hence no liability. Sanguinetti v. United States, 264 U. S. 146; Danforth v. United States, 308 U. S. 271; Marret, Administrator, et al. v. United States, supra.
The Government is not an insurer of riparian owners ■against damages resulting from floods. The fact that it required the intervention of another and efficient cause, namely, the abnormal flood, to produce the injury of which plaintiff complains, clearly indicates that what plaintiff is seeking to recover is not for a taking but for consequential damages and it is well established that the Government is *354 not liable for damages of that character. Bedford v. United States, supra; Jackson v. United States, 231 U. S. 1; Sanguinetti v. United States, supra. L. J. House Convex Glass Co. v. United States, 81 C. Cls. 661, certiorari denied 296 U. S. 611. In the last-named case this court held that where a privately owned gas well adjacent to a pool created in a navigable river by a dam constructed by the Government for the improvement of navigation was not inundated or its operation materially interfered with by the waters of the pool at normal pool level, its inundation and being rendered valueless by the occasional floodwaters of the river did not constitute a taking of private property for which compensation might be recovered from the Government.
An examination of the facts in this case on the basis of the principles and authorities set out above clearly reveals that there was no taking for which the Government must respond in damages, but that it is a case of consequential damages for which the Government is not liable. Plainly without the flood the damages complained of would not have occurred. In fact, in view of the protection afforded to plaintiff’s property by the dike constructed by defendant between plaintiff’s property and the river, it is even conjectural whether plaintiff suffered more or less loss due to the presence of the dam in the river with its attendant abutment and dike. Plaintiff’s plant was located on ground which varied in elevation from 755 to 762 feet, whereas the dike in front of that property was to an elevation of 766 feet. The crest of the flood was at an elevation of 768.8. At its crest the height of the floodwaters was raised by the dam only about six inches. Until the dike was overtopped, substantial protection was afforded to plaintiff’s plant and even after the overtopping it is only reasonable to assume that some further protection was afforded in breaking the force of the waters as they flowed into plaintiff’s plant, thereby decreasing the damage which might otherwise have occurred.
The measure of damages which plaintiff would have us apply illustrates the difficulties which would be encountered in determining the damage attributable to defendant, if the defendant could be held liable. The damages sought are *355 the value of the office building and its equipment at the time of the flood, without taking into consideration that substantial damage had already occurred directly from the flood prior to the time the building was undermined from erosion and destroyed. Prior to the time of its total destruction, the building had been submerged in waters from the flood almost to its eaves and not only had its contents been severely damaged, but some damage had also been done to the building itself. Certainly the damage done the building and its contents prior to the time it fell into the' river was caused by the flood alone and can in no way be attributed to work which defendant had done at that point on the river.
In an effort to bring itself within the various decisions allowing compensation for the taking of property, plaintiff sets out instances where it says there were invasions of its-property by the Government and therefore a taking. In the first place, it says that the dam and dike were inadequate and were not properly constructed, which acts of omission or negligence caused an invasion, destruction, or taking of plaintiff’s property. The first answer to this is that the record shows the dam, abutment, and dike were constructed in accordance with good engineering practice and that they not only had withstood other high floods but would reasonably have withstood any flood of the character previously experienced on this river. The destruction in question came with an abnormal flood which raised the water some seven feet higher than any previous flood. But even if it could be said that there was something in the nature of negligence in this construction work, this would not aid plaintiff for the reason that an. action thereon would sound in tort, of which this court does not have jurisdiction. Mills et al. v. United States, 46 Fed. 738, and Bigby v. United States, 188 U. S. 400.
Plaintiff’s further suggestion that some basis for this cause of action exists because defendant sent its men and equipment onto plaintiff’s land in order to try to stop the erosion which' eventually resulted in the destruction of plaintiff’s property, can not be taken seriously. In his testimony plaintiff’s president had this to say of those efforts: *356 “Well, I certainly would be very unappreciative if I did not give credit to the Engineer’s Office and Major Styer and those that were interested in the very apparent effort that ••they made by shipping in trainloads of rock and stone and all kinds of stuff to make a closure. That is what you refer to ? I am glad to give credit for that.” With respect •to the restoration work after the flood, not only was plaintiff’s ground restored, but also substantial protective work was carried out. Whether the protective work, including the weir, encroached upon and used any of plaintiff’s land for which compensation should be allowed is not an issue in this case.
The two cases on which plaintiff places main reliance as showing an actionable taking of the property similar to that involved in the instant case are United States v. Lynah, 188 U. S. 445, and United States v. Cress, 243 U. S. 316. These cases have been referred to on more than one occasion :as representing the greatest lengths to which courts have one in permitting recovery in cases of this kind. (Transportation Company v. Chicago, 99 U. S. 635; Franklin et al. v. United States, 101 Fed. (2d) 459; and United States v. Sponenbarger et al., 308 U. S. 256.) In the very recent case of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., supra, the application of the doctrine outlined in those cases (Lynah and Cress) was limited and qualified. The tendency has been to limit rather than to extend the application •of this doctrine.
In addition those cases are easily distinguishable on their facts from the case at bar. In the Lynah case there was a permanent flooding of the property; in the Cress case the flooding, though intermittent, was regular and frequent. In both cases these continuing conditions naturally followed from the construction of the dam, and were the foreseeable results of its construction.
This is far different from the circumstances of an unprecedented and unforeseeable flood where, as in the instant case, the dam and protective dike were adequate to fully protect the adjacent property against any flood that had ever been known in that area. In the latter case essential elements of ■an actionable taking are necessarily absent.
*357 In view of tbe foregoing we find that the acts complained of by plaintiff did not constitute a taking of its property by the Government within the meaning of the Fifth Amendment to the Constitution, and that whatever damage was caused to plaintiff’s property by reason of the presence of' the dam in the river was consequential in its nature, for' which the Government can not be required to respond in. damages.
It follows that the petition should be dismissed, and it is-so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case..