George T. **HUTHER** et al.

v.

The **UNITED STATES**.

No. 411–52.

United States Court of Claims.
Nov. 7, 1956.

Clayton L. Burwell, Washington, D. C., for plaintiffs.

Thos. L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This case comes before us on the Government's first defense which is in effect a motion to dismiss plaintiffs' petition on the ground that it does not state a claim upon which relief can be granted.

By the terms of section 9 of the act of March 3, 1899, 30 Stat. 1151,[1] it was made necessary to obtain the consent of Congress before any bridge, dam, dike or causeway could be constructed over or in any navigable waters of the United States.

A short time after such enactment Canada wished to construct a dam partly in American waters. It could not proceed with such construction without first securing the consent of the Congress. On June 18, 1902, 32 Stat. 392, Congress gave consent for the construction of the portion of the proposed dam which would cross or abut upon the territory of the United States, but provided as a condition that the type of the proposed construction should be such as would not, in the judgment of the Secretary of War, materially affect the water level of Lake Ontario or the Saint Lawrence River, or cause any injury to the United States or any citizen thereof. It further provided that the plans and details of the work should be submitted to and approved by the Secretary of War before the beginning of construction.

It is alleged in the petition that the Secretary of War concluded that the dam would not "cause any injury to the United States or any citizen thereof" and issued the permit for the construction. In issuing the permit, however, the Secretary of War added certain conditions which are set out in Exhibit B to plaintiffs' petition. These conditions are as follows:

"1. That if, after said dam has been constructed, it is found that it materially affects the water levels of Lake Ontario or the Saint Lawrence River or causes any injury to the interests of the United States, the government of Canada shall make such changes therein, and provide such additional regulation works in connection therewith, as the Secretary of War may order.

"2. That if the construction and operation of the said dam shall cause damage or detriment to the property owners of Les Galops Island, or to the property of any other citizen of the United States, the government of Canada shall pay such amount of compensation as may be agreed upon between the said government and the parties damaged, or as may be awarded the said parties in the proper court of the United States before which claims for damage may be brought."

We do not see how it is possible to spell out a contractual liability, express or implied, by the terms of these acts, or by the action taken by the Secretary of War. The United States was having no part in the construction. It was an action undertaken by the Canadian government for the benefit of the Canadian government and not for the use of the United States. The fact that in giving consent for the construction by the Canadian government the officials of the United States undertook, as far as possi-

---

1. "Sec. 9. That it shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War: *Provided,* That such structures may be built under authority of the legislature of a State across rivers and other waterways the navigable portions of which lie wholly within the limits of a single State, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced: *And provided further,* That when plans for any bridge or other structure have been approved by the Chief of Engineers and by the Secretary of War, it shall not be lawful to deviate from such plans either before or after completion of the structure unless the modification of said plans has previously been submitted to and received the approval of the Chief of Engineers and of the Secretary of War." 33 U.S.C.A. § 401.

ble, to protect the interests of the United States and its citizens does not serve to create a liability for the construction in which the defendant otherwise had no part.

■ When the United States government constructs dams, dikes and other works affecting navigation and in doing so floods privately owned lands above high water mark, it is liable on the ground that it has taken private property for public use and must compensate such private owner by allowing just compensation.

In such cases, however, it is held that the United States actually acquires the flooded lands as an integral part of the dam and reservoir system which it constructs and the title therefore in effect passes to the United States. In this case there has been no taking of plaintiffs' property by the United States. United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746.

■ The same reasoning applies to the allegation that the United States is responsible because it granted the Canadian government permission to reverse the flow of two Canadian rivers, thus raising the water level of Lake Superior and the other Great Lakes, including Lake Ontario.

In fact, the provisions of the act to which reference has been made and the conditions which the Secretary of War imposed as a part of the granting of the permit, taken in connection with the facts alleged in the petition, show that the function of the United States in connection with the entire transaction was a political or governmental one, and while it is not technically a treaty, it involves questions similar to those that are usually handled in the form of a treaty. The claim, therefore is of a nature that can only be handled by other branches of the Government, and is not one that is committed to this court. Certainly the Secretary of War could not confer jurisdiction upon a United States court which such court had not been authorized by statute to exercise. We

quote from the case of Gray v. United States, 21 Ct.Cl., 340, 344, a suit brought under the French Spoliation Claims Act of January 20, 1885, 23 Stat. 283, as follows:

"The rights of the claimants, if any exist, arise from the acts of the political branch of the Government done in the protection and aid of the Nation. For such rights there can be no remedy other than that granted by the legislature; * * *"

In the case of Yassin v. United States, 76 F.Supp. 509, 517, 110 Ct.Cl. 211, 225, the plaintiff claimed that he had a right to sue the United States for patent infringements by the government of Great Britain by reason of an international executive agreement relating to interchange of patent rights, information, invention, designs or processes between the United States and the United Kingdom of Great Britain and Northern Ireland. We quote from the court's opinion as follows:

"* * * it is clear from the provisions of the Patent Interchange Agreement, as amended, and the provisions of Section 153 of the Judicial Code [28 U.S.C. § 1502], that this court is without jurisdiction to adjudicate any claim growing out of or dependent upon any of the provisions of that agreement."

■ The essence of suits based on the Fifth Amendment is that there must be a taking by the United States of some proprietary interest in the property taken and an appropriation of such interest to the public use. St. Regis Paper Co. v. United States, 76 F.Supp. 831, 110 Ct.Cl. 271, 275–276; Vansant v. United States, 75 Ct.Cl. 562, 566; Camp Far West Irrigation District v. United States, 68 F.Supp. 908, 107 Ct.Cl. 263.

It seems manifest that any damage that may have been caused to the plaintiffs was caused by the action of the Canadian government and recourse should be had by suits in the Canadian courts for any damages that were caused by the action of the Canadian govern-

ment in the construction involved, and that any taking of property was for the use and benefit of the Canadian government, if such suits are permitted by the Canadian government, and, if not, representations and claims should be presented through authorized channels of the executive departments of the two governments. In any event the United States is in the position of a third party. There was no contract, express or implied, between plaintiffs and defendant, and even if the allegations of the petition are taken in their most favorable light there is no taking by the defendant of the property of citizens of the United States for public use.

The petition fails to state a claim upon which relief may be granted by this court. Defendant's special defense is sustained and the petition, as amended, is dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.